## GARRETT, by Curator, v. GARRETT, Appellant.

### Division One, December 24, 1902.

1. **Resulting Trust in Land: TITLE IN ANOTHER.** A trust will result in favor of one whose money is used by another in the purchase of land, whether the title is taken in the name of the purchaser, or in. · the name of another who takes it without consideration or with knowledge of the facts.

2. ———: **PAROL PROOF: CHARACTER.** And the facts that establish such trust may be proven by parol. But mere evidence of declarations made by such purchaser after the purchase, that he had used the money of another in his hands to purchase land, without any declaration of how much money he had so used, and unaided by a single corroborative fact, is not adequate proof to establish a trust.

3. ———: ———: ———: **WHEN ADMISSIBLE.** Evidence of declarations made by the purchaser after he has bought land that he had used the money of another to do so, is admissible, as corroborative of or as sustaining other facts shown, but such declarations alone can never be said to be sufficient to establish a trust in land, the proof for which must be cogent, clear and convincing, and without reasonable doubt.

4. ———: **MONEY OF GRANTEE.** Unless the money used to purchase the land was that of plaintiff, or was a part of a fund created by mingling his money with that of the actual purchaser, there can be no decree declaring a resulting trust to exist in favor of plaintiff, although such purchaser on various other occasions used the money of plaintiff and mingled it with his own, and lost it.

**Appeal from Sullivan Circuit Court.**—*Hon. Jno. P. Butler,* Judge.

REVERSED AND REMANDED (*with directions*).

*D. M. Wilson* for appellant.

(1)   A resulting trust must not be declared on doubtful evidence or even upon a mere preponderance of the evidence.   There should be no room for a reasonable doubt, and the evidence that the purchase was made with the trust funds must be clear and unmistakable.   Johnson v. Quarles, 46 Mo. 424; Ringo v. Richardson, 53 Mo. 385; Worley v. Dryden, 57 Mo. 226; Forrester v. Moore, 77 Mo. 651; Adams v. Burnes, 96 Mo. 361; Roberts v. Walker, 101 Mo. 597; Taylor v. Von Schraeder, 107 Mo. 206; King v. Isley, 116 Mo. 155; McFarland v. LaForce, 119 Mo. 585.   To follow money into land and impress the same with a trust, money must be distinctly traced and clearly proved to have been invested in the land.   It must be clear that the lands have been paid for out of the trust money. It is not sufficient to show the possession of moneys of the estate by the curator, and the purchase of the land by him.   Phillips v. Overfield, 100 Mo. 467.   (2) Where land conveyed to a wife is sold, and the proceeds are used by the husband in the purchase in his own name of other land, he holds the legal title in trust for the wife as her separate property.   Scrutchfield v. Sauter, 119 Mo. 615; Seay v. Hesse, 123 Mo. 450. And where the husband obtains possession of the wife's personal property and buys with it real estate, and takes the deed in his own name, he holds the land as her trustee.   Bangert v. Bangert, 13 Mo. App. 144; Broughton v. Brand, 94 Mo. 169.   And land so bought may lawfully be conveyed by the husband to the wife. Such a deed will not be set aside on the ground of fraud.   Bartlett v. Umfried, 94 Mo. 530; Bank v. Winn, 132 Mo. 80.   Nor will such a transaction furnish any ground for attachment.   Cooper v. Standley, 40 Mo. App. 138; Crawford v. Whitmore, 120 Mo. 144.   The possession of the wife's property by her husband in no way affects her title, but the property will be deemed to be held in trust for her.   Harte v. Leete, 104 Mo. 315; State ex rel. v. Brady, 53 Mo. App. 202; McGregor v. Pollard, 66 Mo. App. 324.   A wife can not

give the proceeds of the sale of her real estate to her husband, though such real estate was not held for her separate use, except by an instrument in writing. Rodgers v. Bank, 69 Mo. 560; Gilliland v. Gilliland, 96 Mo. 522. Nor its products. Houx v. Shaw, 25 Mo. App. 233. (3) The admissions of Garrett, defendant's husband, made in her absence and without her knowledge, and made after the land had been conveyed by his brother to the defendant, Garrett never having been in the actual possession of the land, his father having a life tenancy, are not admissible to in any way affect the defendant. Davis v. Green, 102 Mo. 170; Steward v. Thomas, 35 Mo. 202; Weinrich v. Porter, 47 Mo. 293.

*Childers Bros.* for respondent.

If a trustee purchase an estate partly with his own money and partly with trust money, it can not be predicated that any particular part of the estate was purchased with money of the *cestui que trust,* but he will have a lien on the whole estate for the amount of the trust fund that was misapplied. 2 Perry on Trusts (2 Ed.), sec. 837; Tiffany & Bullard, Trust & Trustees p. 97; 2 Story, Eq. Juris., sec. 1201; 4 Kents Com., *p. 306; Tiedeman on Real Property, sec. 501; Oliver v. Pratt, 3 How. 492; Boyd v. McLean, 1 John. Ch. 587; Batsford v. Burr, 2 Johns. Ch. 408; Munro v. Collins, 95 Mo. 33; Shaw v. Shaw, 86 Mo. 594; Forester v. Moore, 77 Mo. 652; Miller v. Davis, 50 Mo. 572. The principle that the trust fund may be followed into the property into which it has been invested, applies to cases where a guardian or curator purchased property with the funds of his ward. Patterson v. Booth, 103 Mo. 402; Phillips v. Overfield, 100 Mo. 466; Maberry v. Dollarhide, 98 Mo. 198; Honey v. Donohoe, 97 Mo. 141. Upon breach of trust by a trustee, the *cestui que trust* may follow the estate into the hands of a stranger, or he may have his remedy against the trustee personally to recover for damages caused by his unauthorized

acts.    Huckabee v. Billingsly, 50 Am. Dec. 183; Kaufman v. Crawford, 42 Am. Dec. 323; Huetteman v. Viesslemann, 48 Mo. App. 582; Patterson v. Booth, 103 Mo. 402.    A resulting trust arises in favor of one who pays the purchase price of lands, against the party in whose name the conveyance is made.    Strimpfler v. Roberts, 57 Am. Dec. 606; Kelly v. Johnson, 28 Mo. 249; Miller v. Davis, 50 Mo. 572; 1 Greenleaf Evidence (9 Ed.), sec. 266; Boyd v. McLean, 1 Johns. Ch. 582; Botsford v. Burr, 2 Johns. Ch. 404; Stimpfler v. Roberts, 57 Am. Dec. 606; Smithael v. Gray, 34 Am. Dec. 664; Hall v. Sprigg, 12 Am. Dec. 506; Foote v. Colvin, 3 Am. Dec. 478; Price v. Kane, 112 Mo. 412; Hall v. Hall, 107 Mo. 101; Shaw v. Shaw, 86 Mo. 595.    A creditor taking conveyance for a prior debt is not a bona fide purchaser entitled to protection against secret equities.    Lockwood v. Bates, 12 Am. Dec. 121; Dickerson v. Tillinghast, 25 Am. Dec. 528; Donaldson v. Bank Cape Fear, 18 Am. Dec. 577; Harris v. Homer, 30 Am. Dec. 182.    The wife can not allow her husband to deal with her property as if it was his and then claim it as her own.    As between her and her husband she is not estopped; but as between her and innocent parties it is a complete estoppel.    Stone v. Bank, 81 Mo. App. 16; Riley v. Vaughn, 116 Mo. 169; McClain v. Abshire, 63 Mo. App. 333.    Susan R. Garrett was incompetent as a witness to prove that the money which purchased any of these lands was hers.    Miller v. Slupsky, 158 Mo. 643.    Much deference will be given to the trial court's finding on account of the superior advantages it possessed for weighing the evidence and judging the credibility of the witnesses, and this is especially the rule where the witnesses have testified orally.    Lins v. Lenhardt, 127 Mo. 271; Cox v. Cox, 91 Mo. 71; Judy v. Bank, 81 Mo. 404.

ROBINSON, J.—This is a suit in equity by the curator of Harvey Garrett, a minor, to establish a resulting trust in an undivided one-fourth of one hundred and sixty acres of land in Sullivan county, and to

divest the title thereto out of the defendant, and vest same in plaintiff, which the petition alleges was purchased by the defendant's husband, Jesse Garrett, the minor plaintiff's former curator, with his ward's money, and the title thereto taken in the name of defendant, his then wife. The answer admits the curatorship, defendant's marriage to Jesse Garrett, and the latter's death in November, 1893, and that during her husband's curatorship he had received certain money belonging to his ward as set out in the petition and then averred that the land in question had been purchased by her husband with her own money and the deed taken in her name, and that she claimed it as her sole and separate property. The answer further averred that the money so paid by her husband for said land was obtained as the result of a mortgage which she and her husband had executed on 160 acres of land in Adair county in this State, then standing of record in the name of her husband, but which land was in fact the property of herself, and had been purchased with money derived from the sale of eighty acres of land in Sullivan county, one forty of which had been given to her by her father and the other forty she had bought from her brother with her own money, and then denied generally the other allegations of the petition. There was a finding and judgment in the circuit court to the effect that plaintiff have judgment against defendant in the sum of $349.50 and that same is declared a lien on the land in suit (describing it), and that said land be ordered sold to satisfy said judgment, etc., from which judgment the defendant has appealed, and brought the case here for review.

It is contended by appellant that the evidence offered in the case was wholly insufficient to support any judgment, and that the judgment as rendered was not authorized by either the pleadings or the facts, however the facts of the case be considered.

The facts shown were, that in 1890, the defendant's husband, Jesse Garrett, was by the probate court of Sullivan County, appointed curator of the estate of the

minor plaintiff herein, Harvey Garrett, and as such duly qualified and took charge of the moneys and property belonging to the estate of said minor, and continued to make settlement with the court, in which he charged himself as such curator with the amounts of money and property so received until his death in November, 1893, as follows:

On November 11, 1890, Jesse Garrett filed with the probate court an inventory of the property collected from his predecessors, belonging to the estate of his ward, showing that he had received in notes and cash $404.95, and two houses.

On May 12, 1892, Jesse Garrett filed what he called his second annual settlement, in which he charges himself with:

| | |
|---|---:|
| Amount due at last annual settlement...... | $404.95 |
| Interest on same ........................ | 43.00 |
| Mare sold to David McKinney ............ | 82.50 |
| Mare sold to —— Birch.................. | 85.00 |
| Credits ....................$74.55 | |
| Balance ........................... | $541.25 |

On May 13, 1893, he filed what is called his third annual settlement, in which he charged himself with the amount on hand at,

| | |
|---|---:|
| Last annual settlement ................... | $541.25 |
| Interest for one year at 8 per cent .......... | 43.30 |
| Credits .....................  $7.65 | |
| Leaving a balance due and in his hands of.... | $576.90 |

On July 10, 1893, he made and filed with the probate court, in obedience to an order of the judge thereof, a sworn report stating how his ward's money was invested, in which report it was shown that he then held one note of McKinney for $82.20, dated July 6, 1891; one note of Stokes for $100, dated February 1, 1891; cash on hand not loaned $100; and cash that he was using $208.15. After the death of Jesse Garrett in November, 1893, the defendant found among her papers the two last-named notes, which she turned over to the

present curator, the plaintiff in this action, and this was all he ever got from the estate of Jesse Garrett. It was also shown by plaintiff that Jesse Garrett at the time of his death was insolvent, as were also the sureties on his bond as curator.    It was also shown that by the death of Jesse Garrett's mother in 1888, he and his brother, James, William and the plaintiff, Harvey Garrett (the latter being the only heir of Hugh Garrett, deceased, who was a brother of Jesse Garrett), each acquired an undivided one-fourth interest in the land in controversy, situate in Sullivan county, in this State, and that in April, 1893, Jesse Garrett went to Henry county in this State, and bought his brother James's undivided one-fourth interest in this Sullivan county land for three hundred and fifty dollars, and had the deed to that interest made to his wife, the defendant herein; that on July 19, 1893, Jesse Garrett in conjunction with his wife, conveyed his undivided one-fourth interest in said land, inherited from his mother, to one C. A. Hague by quitclaim deed, and on the same day Hague by a like deed conveyed the same interest to the defendant, and that on same day Jesse Garrett had conveyed to his wife, the defendant herein, through the same medium, C. A. Hague, 160 acres of land in Adair county which stood of record in the name of said Jesse Garrett, and that no consideration was actually paid at that time by said defendant to Jesse Garrett for said conveyance to her.

Over the objection of defendant, one William Yardley, a witness called by plaintiff, was permitted to testify to a conversation he had with Jesse Garrett regarding the purchase of the one-fourth interest in the land in controversy sought to be charged by this proceeding.

Yardley testified as follows:

"Q.  Mr. Yardley, were you acquainted with Jesse Garrett in his lifetime?  A.  Yes, sir.

"Q.  Mr. Yardley, in April, 1893, did you have a

Vol 171, mo—11.

conversation with Jesse Garrett when he came back from Henry county? A. Yes, sir.

"Q. Tell the court what that conversation was about, and what he said to you in relation to buying some land?

"Defendant's counsel objects to the conversation of her husband with the witness as incompetent and irrelevant. This defendant could not be bound by any statement or admission of her husband.

"Court: Go ahead, the objection is overruled, to which ruling of the court defendant then and there excepted at the time.

"Q. Tell the court what that conversation was, how it came about, and what he said? A. Why, he said he had just been down to Henry county to buy his brother Jim's interest in the old home place there.

"Q. First tell the court what you went there for? A. I was not at Mr. Garrett's house; he came to my house.

"Q. Tell how the conversation came up? A. Well, he came up there, and as I said before he and I was talking, and he told me about being down to his brother's and buying his interest in the land; and I was needing some money at the same time, and I knew that he had this little boy's money, and I asked him to borrow $100; and he said that he did not have it by him, that he had used it when he went down to Clinton, $250 to buy this land.

"Q. What else did he tell you that he was going to do in the fall? A. He said that he was aiming to get this estate settled up, and going to turn it over to the probate court, that he was getting tired of it, and did not want to handle it any longer.

"Q. What did he say about borrowing money in the fall to settle up this estate? A. Why, no sir, he did not tell me anything about that.

"Q. But he did tell you he had used the money to buy this land? A. He told me that he had used $250, and he did not have any of the money by him; spoke of some notes, that he had out.

"Q.  Did he say who he had bought the land of?
A.  The forty acres of land that he bought up there?

"Q.  Yes, sir?  A.  He told me that he bought it
of his brother Jim."

M. T. Andrews, another witness called by plaintiff,
testified as follows:

"I was probate judge of Sullivan county in 1892.
I remember of Jesse Garrett being guardian of Harvey
Garrett.  This instrument I hold in my hand was some-
thing that was generally filed with the settlement.  If
I remember right it is a report of money loaned.  He
filed this along with his settlement, if I remember
right, at that time.  He was kindy backward about
making a settlement, and I had him come up and file
it; and some men were having proceedings to get off
the bond, and they talked about the money and about a
new bond.  And he said that he had the money invested,
some of it.  He reported here some of it was invested.
He was using it himself, which guardians do sometimes,
which is not exactly according to law, but practice, and
I think that he said he had some of this money invested
at that time."

This was all the testimony offered by plaintiff,
that in the remotest degree tended to support the
charges of the bill, and this we think wholly inade-
quate, if considered alone and undisputed, to au-
thorize the decree prayed for, and certainly not the
judgment rendered, and when considered in the light
of defendant's testimony, and particularly of two
well-established facts thereof, now conceded to be true
by plaintiff himself, it is difficult to conceive upon what
theory of law the judgment in plaintiff's favor is
sought to be maintained.

When it is noted there was not a syllable of testi-
mony offered by plaintiff, tending in any way to show
that Jesse Garrett had ever invested a dollar of his
ward's money in the land in suit, or for that matter in
any land whatever, except by the declaration of that
fact, which Garrett is said to have made to one Yardley,
in April, 1893, when he told Yardley that he had used

$250 of his ward's money in the purchase of this land, and that of his declarations to the probate judge in July of the same year, to the effect that he had invested some of his ward's money in lands, without mentioning the amount of money invested, or the amount and location of the land in which the investment had been made, or in whose name the title to the land was taken, or anything of that kind, the first question that presents itself is, has plaintiff made proof of this essential averment of his bill, that any, of his ward's money was used in the purchase of this land?

Though there is no doubt that a trust will result in favor of one whose money is used by another in the purchase of land, where the title thereto is taken in the name of the purchaser, or of another who takes it without consideration or in knowledge of the facts, as there is also no question but that the facts that create the trust may be proven by parol, yet it is not further true (as respondent must assert to maintain himself in this action) that under our present lax rules, mere evidence of declarations, made by a party afterwards, to the effect that he had used the money of another in his hands to purchase land, is proof adequate to establish that fact, when standing alone and unaided by a single corroborating fact or circumstance. Though under proper circumstance evidence of such declarations may be admitted, as corroborative of or as sustaining other facts shown, it ought never be said to amount to direct and ample proof of the facts claimed to have been admitted by the declaration, in a case like the present, to establish a trust in the lands of another, where the proof must be not only clear and cogent and convincing, but should be without reasonable doubt.

But if it be conceded that the evidence of these declarations made by Jesse Garrett, to the effect that he had used his ward's money in the purchase of the land in suit, standing alone and unsupported as they are, by any other fact or circumstance in the record should be held sufficient to sustain plaintiff's claim (if it is believed he made such a declaration), that support

must give way when it is considered in the light of these two following well-established facts of defendant's testimony, now conceded on this appeal by respondent, to be true. First, that Jesse Garrett on April 5, 1893, deposited in his own name in the Kirksville Savings Bank $554.95 in cash, which he had gotten on that day as the result of a mortgage he and his wife had placed upon 160 acres of land in Adair county, the title of which stood of record in the name of said Jesse Garrett, and, second, that a check for $350 was drawn by said Jesse Garrett upon the Kirksville Savings Bank on April 15th of the same year to pay for the land in controversy, which he had purchased of his brother James, and that said check was duly presented for payment and was paid by said bank on April 21, 1893, out of said $554.95 fund, and this further fact (not however conceded by respondent, but nevertheless shown to be true beyond all reasonable doubt), that Jesse Garrett had no other funds or money deposited in the Kirksville Savings Bank during the year 1893, except the $554.95 deposited on April 5, and that the check for three hundred and fifty dollars given in payment of the land in suit was paid out of that fund.

Before suggesting the effect of the foregoing facts, upon a case made out, as that of plaintiffs, upon a mere declaration of a fact claimed to have been admitted, it is proper that we here say that defendant does not rest her case alone upon the fact that plaintiff had failed to prove that her husband, Jesse Garrett, used the funds of his ward to pay for the land in suit (the title of which was taken in her name) or that the land had been purchased with the funds of her husband, but her claim was, and we think the facts of the case amply support it, that she was the real owner of the $554.95 deposited by her husband in the Kirksville Savings Bank on April 5, 1893, in his name, as she was the real owner of the 160 acres of land in Adair county mortgaged to secure said money, although the title of said land also stood of record in the name of her husband, Jesse Garrett, at the time. All the testimony

in this record (save and except the one mere fact, that title to this Adair county 160 acres of land stood of record in the name of Jesse Garrett) conclusively show that the defendant was the real owner of the land at the time it was mortgaged to procure this $554.95, deposited with the Kirksville Savings Bank on April 5, 1893.

But whether we consider the $554.95 deposited with the Kirksville Savings Bank as the money of defendant, or that of her husband, Jesse Garrett, in whose name it was deposited, the effect is the same, so far as concerns plaintiff and his rights under this proceedings.

If the three hundred and fifty dollars paid by Jesse Garrett out of this $554.95 fund in the Kirksville Savings Bank to his brother James for his interest in the land in suit, was the money of defendant, as she asserts, then as a matter of course the plaintiff must fail in this action.   If it was the money of Jesse Garrett, plaintiff is equally without standing under the averments of his bill.   If the money that paid for the land in question was not the money of Jesse Garrett's ward, as it was definitely alleged to have been in the original bill filed in the cause, or if the land was not paid for out of a fund made by the ''mingling and commingling of the money of his ward with that of his own,'' as plaintiff's petition was afterwards made to read, by an interlined amendment thereto, then the land could not be impressed with a trust in favor of the ward, however much the money of the ward, in the hands of the curator, Jesse Garrett, might have been  shown to have been used by him as his own upon other occasions, or however clear it might have been shown that at other times he commingled and confused his individual funds with that of his ward, or however often and emphatic he might have declared to strangers, that he used part of his ward's money when he bought the land in suit, or had invested his ward's money in lands without specifying the amount invested or the nature of the investment, or where the land was situated, etc.

So whether we consider the $554.95 deposited in the Kirksville Savings Bank by Jesse Garrett on April 5, 1893, as money belonging to defendant,' as she asserts, or as money belonging to Jesse Garrett, as this plaintiff now claims the fact to be, plaintiff's standing before the court is the same, for there is not a word of testimony in the case that tended in the remotest degree to show that this $554.95 deposited in the Kirksville Savings Bank, or any part of it, was ever mingled or confused with any other money or funds, owned or belonging to Jesse Garrett, or that was in his hands as curator of the estate of the plaintiff, Harvey Garrett.

It is not enough to say that testimony was offered (as plaintiff asserts, but which we must say is not disclosed by the record before us) tending to show that Jesse Garrett had confused and commingled money coming into his hands belonging to the estate of his ward with that of his individual funds, when he first took charge of his ward's estate, and that he held and treated it as one fund, so long as this particular fund of $554.95 deposited in the Kirksville Savings Bank and out of which the land in suit confessedly was paid for, had never in fact been confused or commingled with any other funds or money belonging to said Jesse Garrett, or to said Jesse Garrett and his ward.

It does not follow as a reasonable or as a necessary conclusion because the curator had once commingled and confused certain moneys coming into his hands belonging to the estate of his ward, with that of his own, and treated it as one fund (if such had been shown), that all other moneys he might acquire years afterwards should be treated as, and become a part of that original confused and commingled fund.

This was the theory upon which plaintiff seems to have tried his case. This at least is the only possible theory upon which, under any consideration of the facts in this case, a judgment could have been found in his favor.

Under the facts shown the decree sought should have been denied. Under neither the pleadings nor the

facts could the judgment that was entered be maintained.

The bill herein was not framed upon the assumption that defendant was in anywise indebted to plaintiff, and no testimony offered in the case had the slightest tendency to prove the existence of this fact.

It follows from what has been said, the judgment herein should be reversed and the cause remanded with directions that plaintiff's bill be dismissed, and it is so ordered. *Brace, P. J., Valliant* and *Marshall, JJ.,* concur.